UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STEPHEN ROBINSON, and others
similarly situated,

                       Plaintiff,           **OPINION AND ORDER**
                                                                   05-CV-5318 (DLI)(JMA)
        -against-

JOAN A. CUSACK and DAVID N. GREEN
in their individual and official capacities
as employees of the Crime Victims Board,

                       Defendants.
----------------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

      On November 14, 2005, plaintiff brought suit pursuant to 42 U.S.C. § 1983 against defendants Joan A. Cusack and David N. Green in their individual and official capacities as employees of the New York State Crime Victims Board ("CVB"), challenging the constitutionality of New York Executive Law § 632-a ("Section 632-a"). Plaintiff claims that the application of Section 632-a violates the Supremacy Clause of the U.S. Constitution and the doctrine of preemption, and constitutes an *ex post facto* law in violation of Article I of the U.S. Constitution. Plaintiff seeks declaratory relief, and an injunction prohibiting defendants from enforcing Section 632-a against him and all others similarly situated.[1] Plaintiff further seeks an award of compensatory

---

[1] Plaintiff's complaint makes class allegations on behalf of "all inmates and former inmates in New York State who have had the proceeds [whether by settlement or judgment] of their lawsuits commenced under 42 U.S.C. § 1983 restrained, and/or garnished under the existing provisions of the New York State Executive Law." (Compl. ¶ 8.) In the complaint, plaintiff asserts that the members of the class are so numerous that determining their identities would be impractical. However, in plaintiff's opposition brief he names two "potential [class] members," Thomas Wright and Jerry Ison. (Pl.'s Opp. Br. at 3-4.) Plaintiff further asserts that the class members have questions of law and fact in common. (Compl. ¶ 9.) Contrary to plaintiff's assertions, Section 632-a does not impact each proposed class member in the same way because in some instances Section 632-a may result in what is, in effect, a revived statute of limitations

and punitive damages.

Defendants now move to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), or in the alternative, for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). On January 25, 2007, the court held oral argument on defendants' motion to dismiss, at which time the court invited the parties to submit supplemental memoranda of law addressing the potential applicability of the *Rooker-Feldman* doctrine in the instant case. For the reasons set forth below, defendants' motion to dismiss is granted, and plaintiff's complaint is dismissed in its entirety.

**I.     Background**

**A.     New York Executive Law § 632-a**

In response to efforts by convicted serial killer David Berkowitz to profit from the sale of book and movie rights to his story, the New York State legislature enacted Executive Law § 632-a (commonly referred to as "The Son of Sam Law") in 1977. The original Son of Sam Law required any party contracting with an accused or convicted person for a depiction of his crime to submit to the CVB a copy of the contract, and any payments that the accused or convicted person would receive under that contract. The CVB was required to hold those funds in an escrow account "for the benefit of and payable to any victim . . . provided that such victim, within five years . . . br[ought] a civil action . . . and recover[ed] a money judgment." If no action was commenced during that five-year period, the funds were released to the accused or convicted person.

---

period available to a crime victim, whereas in other instances, a crime victim may still have time to file suit under the seven or ten-year statute of limitations found in N.Y. C.P.L.R. § 213-b (McKinney 2001). Therefore, given the deficiency of plaintiff's class allegations, and the fact that plaintiff has not moved for class certification, the class action portion of plaintiff's complaint is hereby dismissed.

2

In 1991, the United States Supreme Court struck down that version of the Son of Sam law as violative of the First Amendment because it "singled out speech on a particular subject for a financial burden that it places on no other speech and no other income." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.,* 502 U.S. 105, 123, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991). To remedy that constitutional infirmity, in 1992 the New York legislature enacted a new version of the statute that broadened its scope to include any income generated from a crime.

In June 2001, the New York State legislature further amended the statute to address the concern that violent criminals received substantial sums of money from civil lawsuits or other sources years after being convicted of their crime(s), but while still in state custody, yet the victims of their crimes were otherwise barred by the statute of limitations from suing to recover compensation from those funds. *See* Governor's Mem. Approving S. 5110-A (June 25, 2001), *reprinted in* Legislative Bill Jacket for ch. 62 (2001), and Governor's Program Bill Number 29 regarding S. 5110-A (2001). In its current form, even after all other relevant statute of limitations have expired, the law provides the victim of a felony an additional three years from the time he or she discovers that the convicted person received "funds of a convicted person" or obtained or generated "profits from a crime" to file a civil action. *See* N.Y. Exec. Law § 632-a(3). The limitations period is revived each time a crime victim discovers that a convicted person has received funds or obtained profits from a crime.[2] "Funds of a convicted person" broadly encompasses "all funds and property received from any source by a person convicted of a specified crime, . . .

---

[2] A crime victim cannot, however, bring more than one suit against a convicted person to recover damages for injuries resulting from the crime because additional suits would normally be barred by the doctrine of *res judicata*. *See Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y. 2d 343, 349 (1999) (citing *Matter of Reilly v. Reid,* 45 N.Y. 2d 24, 27 (1978) ("a valid final judgment bars future actions between the same parties on the same causes of action.")).

excluding child support and earned income," where such person (i) is an inmate, (ii) is on parole or under other supervision, or (iii) has been in prison or under supervision within the last three years. *Id*. at § 632-a(1)(c). "Specified crimes" include violent felonies and certain other serious crimes. *Id*. at § 632-a(1)(e). The first $1000.00 of a judgment obtained against an inmate is protected from recovery, as well as the first ten percent of compensatory damages if the funds were acquired by the defendant pursuant to a judgment obtained after the effective date of the 2001 amendments. *Id*. at § 632-a(3); N.Y. C.P.L.R. § 5205(k) (McKinney 2001).

In addition, Section 632-a creates a notification scheme whereby any person or entity paying "profits of a crime" or "funds of a convicted person" in excess of $10,000 is obligated to notify the CVB. *Id*. at § 632-a(2)(a). The CVB, in turn, must notify the convicted person's known victims. *Id*. at § 632-a(2)(c). Upon receiving notice or otherwise discovering funds of a convicted person, a crime victim may then either file a civil suit against the convicted person or notify the CVB of his or her intention to do so within the three-year period. *Id*. at § 632-a(4). The CVB shall then take necessary action to, among other things, guard against the wasting of assets that may constitute funds of a convicted person or profits of a crime. *Id*. at § 632-a(5). The statute allows the CVB to seek the provisional remedies of attachment, injunction, receivership and notice of pendency on behalf of the crime victim. *Id*. at § 632-a(6).

B.   **The Instant Action**

In 2000, plaintiff was convicted of a sexual abuse crime and sentenced to a term of six years. (Harben Decl. Ex. E.) Also in 2000, plaintiff filed a claim pursuant to 42 U.S.C. § 1983 against the City of New York and New York City police officers. The parties allegedly settled that suit for $28,500.00, of which plaintiff received $17,947.42 on August 6, 2002, while incarcerated at Bare

4

Hill Correctional Facility in Malone, New York. (Compl. ¶¶ 16-20.) On or about January 10, 2003, the CVB sought a preliminary injunction restraining the proceeds of plaintiff's settlement on behalf of a victim of one of plaintiff's crimes. (*Id*. at ¶ 22.) Justice Joseph C. Teresi of the New York Supreme Court, Albany County issued an Order and Judgment for Preliminary Injunction on April 11, 2003. (*See* Compl. ¶ 24; Harben Decl. Ex. D.) On June 4, 2003, Justice Teresi denied plaintiff's application to have the April 11, 2003 order reversed. (*See* Harben Decl. Ex. E.) Plaintiff did not appeal. (Compl. ¶ 25.)

When plaintiff first initiated this lawsuit, he sought to attack the preliminary injunction issued by Justice Teresi on April 11, 2003. However, plaintiff later agreed to settle claims raised by one of the victims of his crimes, which resulted in a portion of the restrained funds being paid to one of plaintiff's rape victims, with plaintiff being allowed to retain $3,500.00 of the funds for himself. The preliminary injunction was lifted and the action brought by the CVB was dismissed. A Stipulation of Settlement was "So Ordered" by Justice Teresi on May 24, 2006, resulting in the restrained funds being released in order to pay the settlement. (Defs.' Suppl. Mem. Ex. A.) Because the settlement had not been reached when the complaint in the instant action was filed, the complaint makes no mention of this state court judgment.

## II. Discussion

### A. Standard for a Motion to Dismiss

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court accepts as true all factual allegations in the plaintiff's complaint. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). However, "inferences favorable to the party asserting jurisdiction should not be drawn." *Id.* A case is properly dismissed under Rule 12(b)(1) when "the

5

district court lacks statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). It is the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court also accepts as true all well-pleaded factual allegations, but, in contrast to a Rule 12(b)(1) motion, draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). The court may consider documents upon which the plaintiff relied when drafting the complaint, such as "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (*quoting Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). In *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth half a century ago in *Conley v. Gibson,* 355 U.S. 41, 78 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 45-46. The Court "retire[d]" *Conley's* "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.,* 127 S. Ct. at 1974.

The Second Circuit has not interpreted the foregoing language to require a "universal standard of heightened fact pleading;" rather, it requires a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such

6

amplification is needed to render the claim *plausible*." *Iqbal v. Hasty,* 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (emphasis in original). However, *Bell Atlantic* holds that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp.,* 127 S. Ct. at 1964-65 (citations omitted).

Defendants originally moved to dismiss plaintiff's complaint on five grounds: (1) abstention; (2) failure to state a claim upon which relief can be granted; (3) mootness and lack of ripeness; (4) the monetary damages sought by plaintiff are barred under the doctrine of qualified immunity and under the Eleventh Amendment; and (5) improper service of process. Given that the underlying state court action was still active at the time, defendants asserted that the court should abstain from deciding the matters raised in plaintiff's complaint pursuant to the doctrine of abstention set forth in *Younger v. Harris.* 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971); s*ee also Diamond "D" Construction Corp. v. McGowan,* 282 F.3d 191, 198-200 (2d Cir. 2002) ("[f]ederal courts are generally required to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings."). However, as discussed above, the underlying state court proceeding was ultimately terminated after plaintiff agreed to settle claims raised by one the victims of his crimes. Justice Teresi "So Ordered" the Stipulation of Settlement on May 24, 2006. (*See* Defs.' Suppl. Mem. Ex. A.) Because the court holds that it lacks subject matter jurisdiction over plaintiff's claim either pursuant to the *Rooker-Feldman* doctrine or because the claim is moot, and alternatively because the claim is barred by *res judicata*, the court need not consider defendants'

other asserted grounds for dismissal.

**B.     *Rooker-Feldman***

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). "The jurisdiction possessed by the District Court is strictly original," *Rooker v. Fidelity Trust, Co.,* 263 U.S. 413, 416, 44 S. Ct. 149, 68 L.Ed. 362 (1923), and the only permissible review of a state-court judgment is by the state's superior courts and/or the Supreme Court. S*ee D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482-83, n.16, 103 S. Ct. 1303, 75 L. Ed.2d 206 (1983). Therefore, the *Rooker-Feldman* doctrine applies where four requirements are met: the federal-court plaintiff (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). While the first and last requirements are procedural, the second and third are substantive. *Id*.

Here, plaintiff does not dispute that he is complaining of injuries caused by the state-court judgment and inviting the district court to review and reject that judgment. Therefore, whether the *Rooker-Feldman* doctrine applies turns on the procedural requirements. With respect to the first procedural requirement, plaintiff contends that he did not lose in state court because he was allowed to retain $3,500.00 of the funds for himself in the settlement agreement. Courts, however, have treated settlement agreements as final judgments for the purpose of the *Rooker-Feldman* doctrine.

*See Allianz Ins. Co. v. Cavagnuolo*, No. 03 Civ. 1636, 2004 WL 1048243, at *6 (S.D.N.Y. May 7, 2004) ("a settlement agreement may constitute a final judgment for purposes of the *Rooker-Feldman* doctrine."). Rather than putting the court in the position of evaluating subjectively whether a settlement should be considered a loss, it seems sufficient for plaintiff to allege that the court-approved settlement somehow violated his rights. Moreover, the fact that plaintiff did not commence the state court action does not alter the conclusion that he lost in state court. Indeed, "the fact that the federal-court plaintiff was the defendant in state court has been used as a 'rough guide' for finding *Rooker-Feldman* applicable, since it suggests that the losing state-court defendant is likely complaining of injury at the hands of the state court and not injury at the hands of the state-court plaintiff." *Jacobowitz v. City of New York Dept. of Housing Preservation and Development,* No. 07 Civ. 658, 2007 WL 594962, at * 5 (E.D.N.Y. Feb. 22, 2007) (*citing Gary v. Geils,* 82 F.3d 1362, 1367 (7th Cir. 1996)).

With respect to second procedural requirement, plaintiff contends that *Rooker-Feldman* does not apply because the state court proceeding was still active when the district court proceeding was commenced. Defendants argue, however, that not allowing *Rooker-Feldman* to apply here would render the policy behind *Rooker-Feldman* meaningless because a plaintiff would merely need to file a federal action prior to a state court judgment being entered against them and then amend the federal action to attack the state court judgment once it has been issued. The court agrees.

The Supreme Court has made clear that the *Rooker-Feldman* doctrine "has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Phillips v. City of New York et al.,* 453 F. Supp. 2d 690, 713 (S.D.N.Y. 2006) (*quoting Hoblock,* 422 F.3d at 85). Although *Rooker-Feldman's* timing requirement will usually be straightforward in that the federal

9

suit will typically commence after the state suit has unequivocally terminated, "federal suits challenging interlocutory state judgments may present difficult questions as to whether 'the state proceedings have "ended" within the meaning of *Rooker-Feldman* on the federal questions at issue.'" *Holblock*, 422 F.3d at 89 (*quoting Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17 (1st Cir. 2005)). In *Federacion*, the First Circuit examined how *Rooker-Feldman* applied to interlocutory state court judgments, and found that *Rooker-Feldman* did indeed bar a federal suit that would have required the federal district court to review and reject an interlocutory determination of a Puerto Rican court. In reaching this conclusion, the First Circuit noted that *Rooker-Feldman* bars a federal lawsuit where "the losing party in state court filed suit in federal court *after the state proceedings ended*.'" *Id*. at 24 (*quoting Exxon,* 544 U.S. at 291). The First Circuit found that state proceedings have "ended" when: (1) "the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved;" (2) "the state action has reached a point where neither party seeks further action" (e.g. if a lower state court issues a judgment and the losing party allows the time for appeal to expire); and (3) "all federal questions have been finally resolved in the state court proceedings, but state law or purely factual questions remain." *Phillips,* 453 F. Supp. 2d at 714 (citing *Federacion*, 410 F.3d at 25).

*Federacion's* analysis of whether a state court proceeding has "ended" has not been formally adopted by the Second Circuit. However, the court finds the First Circuit's reasoning persuasive and, even though this case does not "fit neatly" under the *Rooker-Feldman* doctrine, as defendants point out, the court finds that it lacks jurisdiction to hear plaintiff's claims. (Defs.' Suppl. Mem. at 4.) As this action currently stands, plaintiff's complaint does not attack the May 24, 2006 state court judgment settling the action brought by the CVB because the federal action was filed before the

judgment was rendered on May 24, 2006. However, without the April 11, 2003 preliminary injunction order, there would not have been a May 24, 2006 judgment.

In any event, the instant suit is barred by *Rooker-Feldman* because the April 11, 2003 judgment ordered a preliminary injunction restraining plaintiff's settlement proceeds on behalf of a victim of one of plaintiff's crimes, and as such it constituted an interlocutory order which was appealable as of right. *See* N.Y. C.P.L.R. § 5701(a)(1)(2)(i) (McKinney 1999) ("An appeal may be taken to the appellate division as of right in an action, originating in the supreme court . . . from an order . . . where the motion it decided was made upon notice and it: (i) grants . . . a provisional remedy."). Although plaintiff filed an application to have the April 11, 2003 order reversed, which was denied by Justice Teresi on June 4, 2003, plaintiff has not alleged, and there is nothing in the pleadings to show, that plaintiff appealed the April 11, 2003 decision. The time to appeal that order has expired. *See* N.Y. C.P.L.R. § 5513(a) (McKinney 1999) ("An appeal as of right must be taken within thirty days after service by a party upon the appellant of a copy of the judgment or order appealed from and written notice of its entry, except that when the appellant has served a copy of the judgment or order and written notice of its entry, his appeal must be taken within thirty days thereof."). Therefore, the state proceeding had "ended" for purposes of *Rooker-Feldman* even before the May 24, 2006 state court judgment settling the action because the state action has reached a point where neither party sought further action. *Cf. Phillips,* 453 F. Supp. 2d at 714-15) (holding that the court lacks jurisdiction to hear plaintiff's challenge to the Family Court's removal order because the state court had issued an order on January 24, 2003 directing removal of child, pending further fact-finding hearings, and plaintiffs did not challenge that order but let the time to appeal expire).

Accordingly, the *Rooker-Feldman* doctrine bars the instant suit.

C.  *Res Judicata*

Assuming *arguendo* that *Rooker-Feldman* does not bar the present suit, the court next considers whether ordinary preclusion principles apply. "*Exxon Mobil* teaches that the narrow *Rooker-Feldman* inquiry is distinct from the question whether claim preclusion (*res judicata*) or issue preclusion (collateral estoppel) will defeat a federal plaintiff's suit." *Hoblock*, 422 F.3d at 92. Defendants assert that plaintiff's suit is barred by the doctrine of *res judicata*.

The Full Faith and Credit Clause, U.S. Const., Art. IV, § 1, which is implemented by 28 U.S.C. § 1738, requires a federal court to "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist.*, 465 U.S. 75, 80–81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984). To determine whether *res judicata* applies, the court follows the "transactional analysis approach" adopted by the New York Court of Appeals, which "preclude[s] the litigation of matters that could have or should have been raised in a prior proceeding arising from the same factual grouping, transaction, or series of transactions." *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997) (citations and internal quotation marks omitted). In order for *res judicata* to apply, the federal suit must also involve the same parties as in the prior state judgment, or parties in privity to them. *Id*. Under New York law, privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Id*. (*quoting Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970)).

The instant action involves a constitutional challenge to Section 632-a, brought pursuant to

42 U.S.C. § 1983. Specifically, plaintiff claims that the application of Section 632-a violates the Supremacy Clause of the U.S. Constitution and the doctrine of preemption, and constitutes an *ex post facto* law in violation of Article I of the U.S. Constitution. In the former action, the CVB sought a preliminary injunction restraining the proceeds of plaintiff's settlement on behalf of a victim of one of plaintiff's crimes pursuant to Section 632-a that was issued by Justice Teresi on April 11, 2003. It is clear that plaintiff's claim stems from the same grouping of facts: the preliminary injunction obtained on behalf of the CVB and victims of crimes committed by plaintiff that resulted in the restraint of the proceeds of plaintiff's settlement of a lawsuit brought against New York City employees and entities. Furthermore, the federal suit involves the same parties as in the prior state action, namely plaintiff and defendants Joan A. Cusack and David N. Green in their individual and official capacities as employees of the CVB. In the complaint, plaintiff alleges that defendant Green "signed a Petition to restrain the plaintiff's money," and defendant Cusack "was the supervisor of defendant David N. Green." (Compl. ¶¶ 5-6.) Thus, the issues presently before the court arise out of the same factual grouping as the issues adjudicated in state court, and involve the same parties.

Moreover, plaintiff could have raised his current Section 1983 claim in the underlying proceedings before Justice Teresi. *See Maine v. Thiboutot,* 448 U.S. 1, 10-11, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980) (Section 1983 claims may be raised in state courts); *Ciafone v. Kenyatta,* 27 A.D.3d 143, 807 N.Y.S.2d 114 (2d Dep't. 2005) (defendant raised constitutional objections in lieu of an answer to victim's complaint in an action brought pursuant to Section 632-a); *Crime Victims Board v. Mitchell,* 12 A.D.3d 870, 784 N.Y.S.2d 740 (3d Dep't. 2004) (inmate raised a constitutional challenge to Section 632-a on appeal from an order and judgment for preliminary injunction); *Crime Victims Bd. v. Majid,* 193 Misc. 2d 710, 714 (N.Y. Sup. Ct. 2002) (finding defendant's constitutional

challenge to Section 632-a during CVB's action for a preliminary injunction under Section 632-a(6) unripe for adjudication because no such action had commenced). "[T]here is no reason to assume that ... [plaintiff's] constitutional rights w[ould not have been] protected by the Appellate Division," or if plaintiff had chosen to appeal the April 11, 2003 order, "by the New York Court of Appeals." *Erdmann v. Stevens,* 458 F.2d 1205, 1211 (2d Cir. 1972). "The competency of New York state courts to decide questions arising under the federal Constitution, by which we are all governed, is beyond question." *Id*. Here, plaintiff did object to the underlying state proceedings. However, rather than making a constitutional challenge, he claimed that the restraining order sought on behalf of the crime victim by the CVB was barred by the four-month statute of limitations governing Article 78 proceedings. Plaintiff's argument was unsuccessful. (*See* Harben Decl. Ex. E.) Plaintiff did not appeal the preliminary injunction order. (Compl. ¶ 25.)

Accordingly, the instant action is barred by *res judicata*.

### D. Plaintiff's Claim is Moot

A case becomes moot when "when the issues presented are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome.'" *New York City Employees' Retirement Sys. v. Dole Food Co., Inc.,* 969 F.2d 1430, (2d Cir. 1992) (*quoting Blackwelder v. Safnauer,* 866 F.2d 548, 551 (2d Cir. 1989) (in turn *quoting Murphy v. Hunt,* 455 U.S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) (*per curiam*)). When this occurs, the Constitution's case or controversy requirement, U.S. Const. Art. III § 2, is not satisfied and a federal district court lacks subject matter jurisdiction over the action. *Id*. at 1433. "For a plaintiff to have standing to raise constitutional claims, he must show that he has suffered an actual or threatened injury which is fairly traceable to defendant's

conduct and which is likely to be redressed by a favorable decision." *See Nation Magazine v. U.S. Dep't of Defense,* 762 F. Supp. 1558, 1565 (S.D.N.Y. 1991). A moot action must therefore be dismissed, even if the case was live at the outset but later events rendered it moot.

When plaintiff first commenced the instant action, the underlying state court litigation was still active. However, the preliminary injunction has since been lifted, and the action brought by the CVB has been dismissed because plaintiff agreed to settle claims raised by one of the victims of his crimes. The settlement resulted in a portion of the restrained funds being paid to one of plaintiff's rape victims, with plaintiff being allowed to retain $3,500.00 of the funds for himself. (Defs.' Suppl. Mem. Ex. A.) Because plaintiff has obtained the relief sought in his original complaint, namely an injunction prohibiting defendants from enforcing Section 632-a against him, the complaint is now moot. S*ee Parker,* 93 N.Y.2d at 349 (a crime victim cannot bring more than one suit against a convicted person to recover damages for injuries resulting from the crime); *see also Martin-Trigona v. Shiff,* 702 F.2d 380, 386 (2d Cir. 1983) ("[t]he hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed.").

Plaintiff's complaint is dismissed as moot.

## III. Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in its entirety. The complaint is dismissed without costs to either party.

SO ORDERED.

DATED: Brooklyn, New York
July 10, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge